## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

KOBOLD AVIATION, LLC,        )
a Delaware limited liability company,  )
                                  )
       Plaintiff,           )
                                  )
v.                            )     Case No. 20-3398
                                  )
WEST STAR AVIATION, LLC,      )
a Delaware limited liability company.  )
                                  )
Defendant.           )
                                  )

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff, Kobold Aviation, LLC ("Kobold"), by and through undersigned counsel, and by way of its Complaint and Jury Demand against Defendant West Star Aviation, LLC ("West Star"), hereby states and alleges as follows:

## **PARTIES**

1.    Kobold is a Delaware limited liability company with its principal place of business in Pittsburgh, Pennsylvania.  Kobold is, and at all times relevant to this action was, a resident and a citizen of the Commonwealth of Pennsylvania.

2.    West Star is a Delaware limited liability company with its principal place of business in East Alton, Illinois.  West Star is, and at all times relevant to this action was, a foreign limited liability company registered to do business in the State of Colorado.

## JURISDICTION AND VENUE

3.     The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a) because the parties are in complete diversity, and the amount in controversy exceeds $75,000, excluding interest and costs.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in the District of Colorado.

## STATEMENT OF FACTS

5.     West Star is in the business of maintaining, repairing, and refurbishing corporate aircraft.

6.     West Star has ten locations, one of which is in Grand Junction, Colorado (the "Grand Junction Facility").

7.     West Star's Grand Junction Facility is a Federal Aviation Administration authorized repair station and service center, and has maintenance capabilities for corporate aircraft, including Cessna.

8.     Kobold is responsible for managing a Cessna Conquest II aircraft, with an aircraft registration number of N797RW (the "Conquest"), on behalf of itself and its affiliates, including arranging and paying for the Conquest's maintenance.

9.     The Conquest is owned by the Delaware Trust Co. and Kobold is the beneficiary of that trust.

10.   In the fall of 2018, Kobold and West Star agreed that West Star would complete a Phase 2 inspection, Phase 3 inspection, and D-check inspection on the Conquest at West Star's Grand Junction Facility.

11.  A phase inspection or "progressive inspection" is a maintenance check that focuses on specific components of an aircraft.

12.  A D-check inspection or "heavy maintenance visit" is a comprehensive maintenance check that occurs after an aircraft has been flown a certain number of hours, a certain number of months, or a certain number of flight cycles.

13.  During a D-check inspection, the aircraft undergoes extensive disassembly and overhaul.  A D-check inspection identifies any maintenance issues, resolves those identified issues, and returns the aircraft ready for service.

14.  In December 2018, West Star completed the D-check inspection on the Conquest and returned the Conquest to Kobold.

15.  Between December 2018 and July 2019, Kobold encountered five significant maintenance issues:  (A) a broken and detached high frequency antenna; (B) a leak in the hydraulic pressure line assembly; (C) a broken end on a flap selection cable; (D) a defective Beta switch in the Number 2 engine; and (E) a non-working Air Data Attitude and Heading Reference System ("ADAHRS") unit (collectively, the "Maintenance Issues").

16.  The Maintenance Issues were identified and addressed by Toledo Jet Center, LLC ("Toledo Jet") in Florida, which was where the Conquest was located at the time.

17.  On June 19–21, 2019, while the Conquest was undergoing additional maintenance and repair to address the Maintenance Issues, Kobold was unable to use the Conquest and chartered an alternative aircraft through Sun-Air of Scandinavia A/S ("Sun-Air").

18.  On or about August 30, 2019, Kobold returned the Conquest to Grand Junction, Colorado in order to be reviewed by a broker to assist in the sale of the Conquest.

19.   On or about August 30, 2019, Kobold left the Conquest with West Star at the Grand Junction Facility to resolve the non-working ADAHRS unit that West Star's D-check inspection had failed to identify.   Specifically, West Star was to replace the non-working ADAHRS unit with a working ADAHRS unit received from the original equipment manufacturer, Meggitt PLC ("Meggitt").

20.   In order to prepare the Conquest to be placed on the market, West Star's maintenance and repair also included the completion of upcoming scheduled maintenance, exterior and interior cleaning, and an inspection and completion of identified repairs.

21.   West Star agreed to return the Conquest to service in March or April 2020.

22.   Based on information and belief, in December 2019, West Star received a replacement ADAHRS unit from Meggitt.

23.   Based on information and belief, in-mid April 2020, West Star installed the replacement ADAHRS in the Conquest.   After installation, West Star found the replacement ADAHRS to still be non-operational and in need of additional repairs.

24.   Based on information and belief, leaving the replacement ADAHRS uninstalled— and, therefore, unpowered—for over three months caused it to malfunction upon installation.

25.   On June 13–16, 2020, Kobold chartered alternative aircraft through Sun-Air because West Star had not returned the Conquest to service in March or April 2020 as agreed.

26.   In late summer 2020, West Star completed its maintenance and repairs.

## COUNT I
### Breach of Contract

27.   Kobold alleges and incorporates each of the foregoing paragraphs of this Complaint as though fully set forth herein.

28.   West Star and Kobold had a legally binding agreement under which West Star committed to complete a D-check inspection on the Conquest consistent with industry standards and accepted commercial practices.

29.   A D-check inspection is a comprehensive maintenance check that entails identifying any maintenance issues, resolving those identified issues, and returning the aircraft ready for service.

30.   Within the first six months after West Star's completion of its D-check inspection, Kobold encountered the Maintenance Issues, including a non-working ADAHRS unit.

31.   West Star thereafter entered into an agreement with Kobold to replace the original, non-working ADAHRS unit with a working ADAHRS unit, and agreed to return the Conquest to service in March or April 2020.

32.   West Star failed to timely install the replacement ADAHRS unit and left it uninstalled and unpowered for over four months, which caused the replacement ADAHRS unit to malfunction once installed in mid-April 2020.

33.   As a result of West Star's deficient D-check inspection, untimely installation of the replacement ADAHRS unit, and failure to return the Conquest until the summer of 2020, Kobold is excused from paying for the deficient services and is entitled to recover its damages, including $254,591.92 in addressing the Maintenance Issues and chartering alternative aircraft.

**COUNT II**
**Breach of the Implied Duty of Good Faith and Fair Dealing**

34.  Kobold alleges and incorporates each of the foregoing paragraphs of this Complaint as though fully set forth herein.

35.  Every contract contains an implied duty of good faith and fair dealing, and a violation of the duty gives rise to a claim for breach of contract.

36.  Important aspects of the implied duty of good faith and fair dealing are the duties to act in a reasonable manner and within accepted commercial practices.

37.  West Star breached the implied duty of good faith and fair dealing by failing to identify and repair the Maintenance Issues during its D-check inspection of the Conquest.

38.  West Star also breached the implied duty of good faith and fair dealing by failing to timely install the replacement ADAHRS unit which, in turn, resulted in additional delays in completing the repair.

39.  As a result of West Star's breach, Kobold is entitled to $254,591.92 of damages.

**COUNT III**
**Alternative - Negligence**

40.  Kobold alleges and incorporates each of the foregoing paragraphs of this Complaint as though fully set forth herein.

41.  Kobold relied upon West Star's expertise in conducting a D-check inspection for Kobold's Conquest.

42.  West Star had a duty to identify any maintenance issues.

43.  West Star had a duty to resolve any identified maintenance issues.

44.  West Star had a duty to return the Conquest ready for service.

45.   West Star had a duty to act reasonably under the circumstances.

46.   West Star breached these duties to Kobold when it failed to identify and resolve the Maintenance Issues during West Star's D-check inspection.

47.   West Star also breached these duties to Kobold when it failed to install the replacement ADAHRS unit within a reasonable time from receiving the unit from Meggitt.

48.   As a direct and proximate result of West Star's breach of its duties to Kobold, Kobold has incurred $254,591.92 of damages.

## PRAYER FOR RELIEF

WHEREFORE, Kobold respectfully requests that a judgment be entered in its favor as follows:

1.      That the Court enter Judgment under Count I in favor of Plaintiff based on West Star's breach of contract, and require a West Star payment to Kobold of $254,591.92 or the amount proven at trial;

2.      That, in the alternative, the Court enter Judgment under Count II in favor of Plaintiff based on West Star's breach of the implied duty of good faith and fair dealing, and require a West Star payment to Kobold of $254,591.92 or the amount proven at trial;

3.      That, in the alternative, the Court enter Judgment under Count III in favor of Plaintiff based on West Star's negligence, and require a West Star payment to Kobold of $254,591.92 or the amount proven at trial; and

4.      That the Court award to Kobold such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Kobold demands a jury trial on all counts.

Respectfully submitted this 16th day of November, 2020.


s/Joseph G. Martinez
Joseph G. Martinez
Dentons US LLP
1400 Wewatta Street, Suite 700
Denver, CO 80202
Telephone:  (303) 634-4371
Facsimile:  (303) 634-4400
E-mail:  joe.martinez@dentons.com


ATTORNEY FOR PLAINTIFF, KOBOLD
AVIATION, LLC